KEEFER (KEATING v.). See Case No. 7,-635.

## Case No. 7,637.

### In re KEELER.

[Hempst. 306.] [1]

District Court, D. Arkansas.    April, 1843.

HABEAS CORPUS—ISSUANCE—PROPER OATH—HEARING AND DETERMINATION—MILITARY AUTHORITY—ENLISTMENT OF MINOR.

1. By the judicial act of 1789 [1 Stat. 73], the courts and judges of the United States are expressly authorized to issue writs of habeas corpus, and reference must be made to the common law to ascertain the nature of that writ. [Ex parte Watkins] 3 Pet. [28 U. S.] 201.

2. The writ of habeas corpus is a great prerogative writ known to the common law, the great object of which is, the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error to examine the legality of the commitment.

3. The power of state courts and judges to issue this writ under the laws of the United States doubted.
[Cited in Re Reynolds, Case No. 11,722; Re Farrand, Id. 4,678; Case of Tarble, 13 Wall. (80 U. S.) 411.]

4. The writ of habeas corpus does not issue, as a matter of course, on application, and if the defect or illegality does not appear, an affidavit should be made, stating the circumstances under which the person imprisoned is entitled to the benefit of the writ.

5. The writ will not be issued when it appears on the showing of the applicant that he is not entitled to its benefit. Examples given of the writ being denied.

6. The power to issue the writ and enforce obedience to it, being vested in the courts and judges of the United States, they should promptly interfere in behalf of an injured party, when a proper case is presented.

7. The military is subordinate to the civil authority, and the privilege of the writ of habeas corpus cannot be suspended unless when in cases of rebellion or invasion the public safety may require it.

8. As interferences with the military authority are regarded with jealousy, a strong case should be made out, and all the requisites of the law substantially complied with, before the writ is awarded against a military officer.

9. The enlistment of a minor under twenty-one years of age, without the consent of his parent or guardian, in the army, is illegal, and such minor will be discharged at the instance of his parent, guardian, or next friend, on proof being made thereof before any court or judge of the United States.
[Cited in Re McDonald, Case No. 8,752.]

10. Applications of this nature must be supported by oath, taken before some competent officer of whom judicial notice will be taken, or who is shown to be such by proper evidence.

11. The writ will not be granted where the application is sworn to before a justice of the peace of another state, and there is no evidence of the official character of such justice.

12. The courts and judges of the United States cannot take judicial notice of the justices of the peace of another state.

Habeas corpus. The application of Lewis Keeler, representing himself to be the father of George B. Keeler, was presented to the Honorable Benjamin Johnson, district judge at chambers, in vacation, stating that George

[1] [Reported by Samuel H. Hempstead, Esq.]

B. Keeler was his son, and had, without his permission or consent, enlisted as a soldier in the 2d regiment of United States dragoons, and was then in Company A of that regiment, at Fort Washita, in service; and after stating the time and place of enlistment, it was alleged that the said George B. Keeler was a minor, under twenty-one years of age, and that his enlistment was contrary to the laws of the United States, and on this ground a writ of habeas corpus was prayed to be directed to the commanding officer at Fort Washita, requiring the body of George B. Keeler to be produced, together with the cause of his detention, to undergo and receive what the judge should consider concerning him, in the premises. The application was verified by the affidavit of the applicant, purporting to be sworn to before a justice of the peace of the state of New York, but was not otherwise authenticated, nor his official character otherwise proved.

S. H. Hempstead, for applicant.

JOHNSON, District Judge. The judicial act of 1789 (1 Story's Laws, p. 59, § 14) authorizes all the courts of the United States to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute which may be necessary for the exercise of their respective jurisdictions and agreeable to the principles and usages of law. And it is expressly provided by the same act, that either of the justices of the supreme court, as well as judges of the district courts, shall have power to grant writs of habeas corpus for the purpose of inquiring into the cause of commitment, with the restriction only that writs of habeas corpus shall in no case extend to prisoners in jail, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify.

In the Case of Watkins, 3 Pet. [28 U. S.] 201, it was said by Chief Justice Marshall, in delivering the opinion of the court, that "no law of the United States prescribes the cases in which the writ shall be issued, nor the power of the court over the party brought up by it." The term is used in the constitution as one which was well understood, and the judicial act authorizes this court and all the courts of the United States, and the judges thereof, to issue the writ "for the purpose of inquiring into the cause of commitment." This general reference to a power which we are required to exercise without any precise definition of it, imposes on us the necessity of making some inquiries into its use according to that law which is in a considerable degree incorporated into our own.

The writ of habeas corpus is a great prerogative writ known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error to examine the legality of the commitment. 1 Chit. Cr. Law, 180. No doubt exists respecting the power, and the question is, whether such a case is presented as ought to call for its exercise. The act of congress fixing the military peace establishment of the United States of March 16, 1802, provides "that no person under the age of twenty-one years, shall be enlisted by any officer, or held in the service of the United States, without the consent of his parent or guardian or master, first had and obtained, if any he have," and the act then imposes a pecuniary penalty on the enlisting officer. 2 Story's Laws, p. 832, § 11 [1 Stat. 134]. Such an enlistment being illegal, a minor is entitled to be discharged on the application of his father or guardian or next friend, on a showing satisfactory to the court or judge. It is an illegal confinement of his person, and he may be released on habeas corpus without any application having been first made to the war, or any other, department of the government for his discharge. U. S. v. Anderson [Case No. 14,449]; In re Ferguson, 9 Johns. 239; In re Carlton, 7 Cow. 471; Com. v. Cushing, 11 Mass. 67; Com. v. Harrison, Id. 63; In re Roberts, 2 Hall, Law J. 192; Husted's Case, 1 Johns. Cas. 136.

In some of these cases the power of state courts and judges over the subject is denied, but in all of them the jurisdiction of the courts and judges of the United States to interfere in a case like this, is held to be complete and unquestionable, and I express no decided opinion as to whether the state courts have or have not jurisdiction, although the inclination of my mind would lead me to adopt the negative of that proposition, for the reasons so strongly urged by Chief Justice Kent in Ferguson's Case, 9 Johns. 239, backed by considerations peculiar to the jurisprudence of the courts of the United States, and which would prevent their interference with state authority on the one hand, and should prevent a like interference on the part of the state tribunals with the authority of the United States on the other.

Whenever a case is presented embraced within the provision alluded to, no difficulty would be felt by me in issuing the writ, since the power to do it is clear, and there is nothing in the subject to prevent it or render it improper. The military is subordinate to the civil authority, and the privilege of the writ of habeas corpus cannot be suspended unless when, in cases of rebellion or invasion, the public safety may require it. Const. art. 2, § 9. It is only in that event the writ cannot be issued. There is no other restriction. In Ex parte Stacy, 10 Johns. 333, Kent, C. J., said: "It is the indispensable duty of this court, and one to which every inferior consideration must be sacrificed,

to act as a faithful guardian of the personal liberty of the citizen, and to give ready and effectual aid to the means provided by law for its security. Nor can we hesitate in promptly enforcing a due return to the writ when we recollect that in this country, the law knows no superior; and that in England their courts have taught us, by a series of instructive examples, to exact the strictest obedience to whatever extent the persons to whom the writ is directed may be clothed with power or exalted in rank." And accordingly in that case the court did not hesitate to award an attachment for contempt against Morgan Lewis, a general of division in the army of the United States (August 1813), commanding at Sackett's Harbor, for a refusal to obey the writ.

In the sentiments expressed by the chief justice on that occasion, I fully concur, and will add that there is no officer, civil or military, so exalted, except the president of the United States, as not to be subject to this writ, and none so low as to escape its operation. The officer and the citizen must alike yield to its mandate. The president himself would not be exempt because he is above the law or because he can do no wrong, but because he cannot be held responsible except through the medium of impeachment, and to allow the writ to go to him, would involve the necessity of punishing him for a refusal to obey it, and such a power does not belong to the judiciary. The power to issue the writ in this case and compel obedience to it, is clear; but it is to be observed that the writ of habeas corpus does not issue as a matter of course on application, although it is frequently called a writ of right, and is so in the enlarged sense of that term. But where the defect or illegality complained of does not appear, an affidavit should be made stating the circumstances under which the person imprisoned or detained is entitled to the benefit of the writ. 1 Chit. Cr. Law. 124; Hand. Prac. 519; Ex parte Bruce, 8 East, 27; In re Hottentot Venus, 13 East, 195. In the English courts affidavits have been uniformly required, as an examination of the cases will show. And it may not be improper to remark, that as interferences with the military authority for any cause whatever are regarded with jealousy, a strong case ought to be made out, before a court or judge of the United States would send the writ to a military officer. Reasonable grounds must exist for awarding the writ, because if it should issue upon a mere unsupported application, a felon, under sentence of death, or undergoing imprisonment in a prison, or a person confined for insanity, or other prudential reasons, might obtain a temporary enlargement, although certain to be remanded. And therefore, Sir Edward Coke, when chief justice, did not scruple to deny a habeas corpus to one confined by the court of admiralty for piracy, there appearing on his own showing, sufficient grounds

to confine him. 3 Bulst. 27; 2 Rolle, 138; 3 Bl. Comm. 132. And so the court of king's bench in the Case of Schiever, 2 Burrows, 766, denied the writ, saying, that upon his own showing he was clearly a prisoner of war and lawfully detained as such. It must sufficiently appear that the party is imprisoned or detained against his will, without authority of law, and is consequently entitled to be relieved by the efficacy of this writ. It is the imperative duty of every district judge of the United States, when a proper case is presented either in court or at chambers, to promptly interfere in behalf of the injured party, and for one it will always be my pleasure to do so, because by the constitution itself it is plainly enjoined upon every officer of the government, civil and military, judicial, executive, and legislative, to guard and protect the personal liberty of the citizen, and not sanction any invasion of it without due process of law.

What would be sufficient grounds to issue a writ of habeas corpus, must, to a great extent, depend on each particular case; and while the court or judge, so far from throwing obstacles in the way, would undoubtedly afford every reasonable facility to an injured person to obtain the benefit of this great and salutary remedy, yet too willing an ear should not be lent to these applications, backed as they generally are by our sympathies, lest a doubtful wrong or fanciful injury should be redressed at the expense of public justice. And moreover as these applications are hurtful to the military service, productive of serious inconvenience, not unfrequently attended with great expense, besides encouraging an idea among soldiers, ignorant of law, that a discharge may easily be obtained by appealing to the judicial authorities of the United States; it would seem to follow as a necessary consequence, that a strong case should be made out, and all the requisites of the law at least substantially complied with, before this extraordinary power can be successfully invoked. The proof of the facts alleged in this application, before a court or judge of the United States, would certainly entitle George B. Keeler to be discharged. But in the exercise of a sound discretion it would not be proper, as it seems to me, to award a writ of habeas corpus in the case at present, because the application must be treated as unsupported by affidavit or oath, since judicial notice cannot be taken of a justice of the peace of a sister state, and there is no proof of any kind to show that the person before whom this application purports to have been verified, was in fact a justice of the peace, and as such authorized to administer oaths, for the false swearing of which a person could be prosecuted for perjury. The certificate of the justice simply, cannot be received as evidence of his authority, because he is not an officer of such grade and rank as to make his official acts prove themselves.

He is not like a notary-public, whose acts prove themselves in all commercial countries, when verified by his notarial seal. 3 Wend. 178. These applications should be supported by oath, taken before some competent person authorized to administer the same, and of whom judicial notice will be taken, or who is shown to be so by proper evidence; and this application failing to show that, must be denied, but without prejudice to another application.