## In re LEWIS.

(Circuit Court. N. D. Florida. April 12, 1902.)

**1. HABEAS CORPUS—PRACTICE.**

Where the cause of imprisonment fully appears in the application for habeas corpus and the exhibits thereto, it is proper to issue an order requiring the officer to show cause why the writ should not issue, and dispose of the case without first issuing the writ itself.

**2. SAME—GROUNDS FOR DISCHARGE—TECHNICAL OBJECTIONS.**

Habeas corpus will not issue unless the court under whose warrant an accused is held is without jurisdiction; and mere objections to the indictment against him as too vague and general, and not sufficiently informing him of the offense charged, cannot be considered.[1]

**3. PEONAGE—ACT ABOLISHING—CONSTRUCTION.**

Though the system of peonage in New Mexico was the moving cause for the enactment of the statute (14 Stat. 546; Rev. St. U. S. §§ 1990, 1991, 5526, 5527) abolishing and prohibiting peonage, its title and the senate debates showing that to be the fact, the act does more than merely abolish an existing system, and makes criminal certain acts which would tend to sustain or re-establish such a system, section 5526 providing for the punishment of any person who holds, arrests, returns, or causes to be returned, any person "to a condition of peonage."

**4. SAME—CONSTITUTIONALITY.**

Under Const. Amend. 13, providing that "neither slavery nor involuntary servitude, except as a punishment for crime, * * * shall exist in the United States," and that "congress shall have power to enforce this article by appropriate legislation," congress has power to make laws against involuntary servitude in the form of peonage.

**5. HABEAS CORPUS—GROUNDS FOR DISCHARGE.**

Objection that a system of peonage such as once existed in New Mexico must exist before the statute prohibiting peonage will apply goes to the sufficiency of the indictment or the evidence to be offered on the trial for violating the statute, and will not be determined on an application for habeas corpus.

**6. SAME.**

Failure to make an indictment good against demurrer, even though it contains a statement of particular facts which is not sufficient, the indictment also using the words of the statute, will not entitle accused to discharge on habeas corpus, especially where at the conclusion of his trial he can avail himself of the defect by writ of error.

---

[1] See Habeas Corpus, vol. 25, Cent. Dig. § 92; 1897 Dig. § 11 [k].

Habeas Corpus.

B. C. Tunison, for petitioner.

John Egan and William Wirt Howe, U. S. Attys.

SHELBY, Circuit Judge. At the March adjourned term, 1901, of this court, the grand jury indicted Robert W. Lewis, Benjamin J. Douglas, and Joseph Thomas for conspiring to return one George Walker to a condition of peonage. It is charged that in pursuance of the conspiracy Robert W. Lewis did assault, beat, and wound the said George Walker, and force him to return to his creditor's place of business, and that this was done for the purpose of compelling Walker to work for R. W. Lewis and others,—"to work out a debt claimed to be due them." The second count in the indictment charges that the same defendants did conspire to cause to be returned and aid in returning to a condition of peonage one George Walker, by forcibly and against his will returning him to work for R. W. Lewis and others, to be held by them to work out a debt claimed to be due them; and that in pursuance of the conspiracy the defendants Douglas and Thomas did, by threats and force, compel Walker, against his will, to accompany them to the place of business of Robert W. Lewis and others, and did assault and beat and wound the said Walker. At the same term the grand jury returned another indictment against the same defendants, charging that they did unlawfully and knowingly return one George Walker to a condition of peonage by forcibly and against his will returning him to work for R. W. Lewis and others, naming them, to be held by them to work out a debt claimed to be due to them by him, the said Walker. These indictments are copied in the margin.[1]

These cases coming on for trial in the circuit court, the defendants filed separate motions to quash each of the indictments, assigning, among other grounds, that the indictments charged no offense against the laws of the United States. It is also alleged in the motion as to the first indictment that the objects and purposes of the alleged conspiracy were not set forth; that the alleged conspiracy is not such as is prohibited by law; and that the defendant Robert W. Lewis is therein charged with two distinct, independent offenses. The circuit court (Judge Swayne presiding) overruled these motions to quash, and the defendant Lewis thereupon filed this petition for the writ of habeas corpus. It is averred in the petition that he is unjustly and unlawfully detained in prison at Pensacola by Thomas F. McGourin, United States marshal for the Northern district of Florida, by order of the circuit court of the United States for that district. It appears from the petition that the petitioner is held to answer the two indictments, which are made exhibits to the petition. The motions to quash and the court's ruling thereon are also shown by the petition. The petitioner prays for the writ of habeas corpus to be directed to the marshal, and he seeks to be discharged from custody because (1) neither of the two indictments shows any acts to have been committed by the petitioner which violate any law of the

---

[1] See note at end of case.

United States, and (2) the United States circuit court for the Northern district of Florida has no jurisdiction of any offense charged in the indictments.

This petition was presented to a judge of this court on March 15, 1902, and an order was made on that day that T. F. McGourin, United States marshal for the Northern district of Florida, show cause on April 1, 1902, why a writ of habeas corpus should not issue as prayed for in the petition. It was also ordered that a copy of the petition be served on the marshal and on the United States attorney for the Northern district of Florida. This order provided that it was not to prevent the circuit court's proceeding with the trial of the case. On April 1st, at the hearing, the marshal filed an answer to the petition and the rule showing that he held the petitioner under the indictments which were annexed to the petition; that the motions to quash the indictments were argued and considered by the court, and duly overruled, the court holding the indictments good and sufficient; and, the petitioner having been surrendered by his bondsman, it was ordered by the court that he be held for trial; and he was duly committed to the custody of the marshal, and is held by him under the regular process of the court issued on the indictments.

1. The usual course on the application for the writ of habeas corpus is to issue the writ, and, on its return, to hear and dispose of the case. But when, as in this case, the cause of the imprisonment fully appears by the petition and the exhibits thereto, the practice prevails for the court to determine whether, on the facts presented in the petition, the prisoner if brought before the court would be discharged. Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281. And where the hearing is had, without issuing the writ an order may be made requiring the officer or person holding the prisoner to show cause why the writ should not issue. Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274. Where the return to the rule shows all the essential facts, the case may be disposed of as fully as if the writ had issued.

2. The question to be decided is one of jurisdiction. If the prisoner is charged with a misdemeanor or crime of which the United States circuit court for the Northern district of Florida has jurisdiction, he cannot be discharged on habeas corpus. The indictments are for acts alleged to have occurred in that district, so we have only to see if there are any statutes to support them.

If two or more persons conspire to commit any offense against the United States, and one or more of them do any act to effect the object of the conspiracy, all the parties to the conspiracy are liable to indictment and penalties. Rev. St. U. S. § 5440. Under section 5526, Id.:

"Every person who holds, arrests, returns, or causes to be held, arrested, or returned, or in any manner aids in the arrest or return of any person to a condition of peonage, shall be punished by a fine of not less than one thousand nor more than five thousand dollars, or by imprisonment not less than one year nor more than five years, or by both."

In one of the indictments it is charged that the prisoner conspired with others to violate the provisions of the statute last quoted. A

learned argument is submitted in behalf of the petitioner to show that the indictment is defective; that it is too vague and general; that it does not inform the accused of the nature and cause of the accusation, and so forth. Objections of this kind cannot be considered on this application. The circuit court has overruled a motion to quash the indictment which raises those questions. If it be conceded that the court erred (a question not considered or decided), the error could not be corrected on this application. It has become a familiar general rule that habeas corpus will not issue unless the court under whose warrant the prisoner is held is without jurisdiction. In re Chapman, 156 U. S. 211, 215, 15 Sup. Ct. 331, 39 L. Ed. 401.

3. The learned attorney for the petitioner also contends that the circuit court has no jurisdiction of the case made by the indictment, because it is contended the purpose of the statute (14 Stat. 546; Rev. St. U. S. §§ 1990, 1991, 5526, 5527) was only to abolish the system of peonage in the territory of New Mexico and prevent its recurrence there or elsewhere. Section 5526 of the Revised Statutes, which is taken from the act cited, provides that every person who holds, arrests, returns, or causes to be held, arrested, or returned, or in any manner aids in the arrest or return, of any person "to a condition of peonage," shall be punished as therein provided. This statute clearly makes the acts condemned a criminal offense. The existence of the system of peonage in New Mexico doubtless caused the passage of the act. Its title, as well as the debate in the senate on its passage (Cong. Globe 1866–67, Pt. 3, p. 1571), show that the system in New Mexico was the moving cause for the legislation. But the act does more than to merely abolish an existing system. It makes criminal certain acts, which would tend to sustain or re-establish such a system. One of the indictments is for a conspiracy to violate the provisions of the statute and the other is for a violation of the statute. As has been shown, the question of the technical sufficiency of the indictments is not to be considered in this proceeding.

4. The thirteenth amendment to the constitution provides that "neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist in the United States, or any place subject to their jurisdiction," and that "congress shall have power to enforce this article by appropriate legislation." "Involuntary servitude" is forbidden as well as slavery. The supreme court said in the Slaughter House Cases, 16 Wall. 36, 72, 21 L. Ed. 394, that, "while negro slavery alone was in the mind of the congress which proposed the 13th article, it forbids any kind of slavery, now or hereafter. If Mexican peonage or the Chinese coolie labor system shall develop slavery of the Mexican or Chinese race within our territory, this amendment may safely be trusted to make it void." The congress unquestionably has power to make laws against "involuntary servitude," whether it be peonage, vassalage, serfage, or villeinage. The statute in question makes it an offense to hold or return one to a condition of peonage. The word "peonage" as used in the statute includes cases of involuntary servitude to work out a debt. But every case of such servitude may

not be within the statute. A peon is "a species of serf, compelled to work for his creditor until his debts are paid." Cent. Dict. The statute contains words pointing to this definition, for it refers to the service or labor of persons "as peons in liquidation of any debt or obligation." 14 Stat. 546; Rev. St. U. S. § 1990.

It is contended that a system of peonage like that once in force in New Mexico must exist before the statute will apply. That question need not now be decided. The statute, by its terms, embraces the case of the return of a single person to "a condition of peonage." But whether the person held in, or returned to, such condition is within the statute, unless he and others are also held under a system, pretended law, or custom, is a question relating rather to the sufficiency of the indictments or the evidence to be offered on the trial, questions not involved on this application.

It is true, as claimed, that it is not always sufficient for an indictment to follow the words of a statute. Sometimes the pleader must do more,—descend to particulars. Without expressing any opinion as to the sufficiency, on demurrer, of the indictments in question, I may say that a failure to make an indictment technically good in that respect, even when there is a statement of particular facts that is not sufficient, the indictment also using the words of the statute, would not entitle the defendant to be discharged on habeas corpus; certainly not when, at the conclusion of his trial, he could avail himself of the defect by writ of error.

I think the circuit court has jurisdiction of the cases made by these indictments, and that the petitioner is not entitled to the writ of habeas corpus. An order will be made denying the writ.

Writ denied.

### NOTE.

Omitting the captions, the indictments are as follows:

"The grand jurors of the United States, chosen, selected, and sworn in and for the Northern district of Florida, and Western division, upon their oaths present that heretofore, to wit, on the twenty-seventh day of June, in the year of our Lord one thousand nine hundred and one, Robert W. Lewis, Benjamin J. Douglas, and Joseph Thomas, late of the Western division of the Northern district of Florida, did then and there unlawfully and feloniously conspire, confederate, and agree together to knowingly and willfully return to a condition of peonage one George Walker by forcibly and against the will of him, the said George Walker, returning him, the said George Walker, to work to and for R. W. Lewis, B. N. Lewis, and S. E. Lewis, copartners doing business under the firm name and style of Lewis Naval Stores Company, to be held by them, the said Lewis Naval Stores Company, to work out a debt claimed to be due them, the said Lewis Naval Stores Company, by the said George Walker, and afterwards, to wit, on the day aforesaid, in pursuance of and for the purpose of effecting the object of said conspiracy, the aforesaid Benjamin J. Douglas and Joseph Thomas did, by threats and force, compel the said George Walker, against his consent and will, to accompany them to the place of business of said Lewis Naval Stores Company, and the said Robert W. Lewis did assault, beat, and wound him, the said George Walker, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States. (2) And the said grand jurors aforesaid, upon their oath aforesaid, do further find and present that one Robert W. Lewis, Benjamin J. Douglas, and Joseph Thomas, heretofore, to wit, on the twenty-seventh day of June, in the year of our Lord one thousand nine hundred and one, in and within the district aforesaid, and within the jurisdiction of this

court, then and there did unlawfully and feloniously conspire, confederate, and agree together to knowingly and willfully cause to be returned and aided in returning to a condition of peonage one George Walker, by forcibly and against the will of him, the said George Walker, returning him, the said George Walker, to work to and for R. W. Lewis, R. N. Lewis, and S. E. Lewis, copartners doing business under firm name and style of Lewis Naval Stores Company, to be held by them, the said Lewis Naval Stores Company, to work out a debt claimed to be due them, the said Naval Stores Company, by the said George Walker; and afterwards, to wit, on the day aforesaid, in pursuance of and for the purpose of effecting the object of said conspiracy, the aforesaid Benjamin J. Douglas and Joseph Thomas did, by threats and force, compel the said George Walker, against his consent and will, to accompany them to the place of business of said Lewis Naval Stores Company, and the said Robert W. Lewis did assault, beat, and wound him, the said George Walker, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States."

The second indictment:

"The grand jurors of the United States, chosen, selected, and sworn in and for the Western division of the Northern district of Florida, upon their oaths present that heretofore, to wit, on the twenty-seventh day of June, in the year of our Lord one thousand nine hundred and one, Robert W. Lewis, Benjamin J. Douglas, and Joseph Thomas, late of the said Western division of the Northern district of Florida, did then and there unlawfully and knowingly return one George Walker to a condition of peonage by forcibly and against the will of him, the said George Walker, returning him, the said George Walker, to work to and for R. W. Lewis, R. N. Lewis, and S. E. Lewis, copartners doing business under the firm name and style of Lewis Naval Stores Company, to be held by them, the said Lewis Naval Stores Company, to work out a debt claimed to be due to them, the said Lewis Naval Stores Company, by him, the said George Walker, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States. (2) And the grand jurors aforesaid, upon their oaths aforesaid, do further present that heretofore, to wit, on the twenty-seventh day of June, in the year of our Lord one thousand nine hundred and one, Robert W. Lewis, Benjamin J. Douglas, and Joseph Thomas, late of the said Western division of the Northern district of Florida, did then and there, unlawfully and knowingly, cause and aid to be returned one George Walker to a condition of peonage, by forcibly and against the will of him, the said George Walker, causing and aiding him, the said George Walker, to be returned to work to and for R. W. Lewis, R. N. Lewis, and S. E. Lewis, copartners doing business under the firm name and style of Lewis Naval Stores Company, to be held by them, the said Lewis Naval Stores Company, to work out a debt claimed to be due to them, the said Lewis Naval Stores Company, by him, the said George Walker, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States."