# JENSEN v. SEVY.

No. 6540. Decided March 5, 1943. (134 P. 2d 1081.)

222

*Cline & Cline,* of Milford, for plaintiff.

*N. J. Bates,* of Richfield, for defendant.

LARSON, Justice.

Application for writ of mandamus to compel Hon. John L. Sevy, Jr., Judge of the District Court of Sevier County, to hold a hearing on a writ of habeas corpus. This court issued an alternative writ directing defendant to hold such hearing, or to show cause before this court why he did not do so. Defendant did not hold such hearing, but filed an answer joining issue to show cause and justify. The issues involved will appear from the following statement of facts:

In July, 1940, the Juvenile Court of the Sixth Judicial District, with the consent of Fern Jensen, the plaintiff herein, made and entered an order, declaring Maxine Jensen, minor daughter of plaintiff, a ward of the Juvenile Court, and placing her for part of the year with her paternal grandparents and part of the year, with her maternal grandparents. The mother of the child was dead. This order was based upon a finding that the father was not a proper person to have the custody. In July, 1941, the father, Fern Jensen, hereinafter called plaintiff, who had remarried, petitioned the Juvenile Court to modify the aforesaid order and give him the custody of his child. At the hearing on this petition the Juvenile Court entered an order, out of which this action grows, vacating all previous orders and providing:

"That the Court retains jurisdiction of this matter * * * and in the event said petitioner, Fern Jensen, deports himself becomingly between the date hereof and June 1, 1942, then and in the event said petitioner, Fern Jensen, shall have and enjoy the sole custody of said minor child. * * *"

From such order plaintiff appealed to this court, which appeal is now pending. After June 1, 1942, plaintiff demanded his child from its maternal grandparents, the Sorensens, and his demand being refused, he applied to this

court for a writ of habeas corpus directed against the Sorensens. This court issued the writ of habeas corpus, and made the writ returnable before the District Court of Sevier County. When the writ of habeas corpus came before that court, defendants therein, as a return to the writ filed what was denominated as, and in the form of, a general demurrer, merely setting up that "the petition does not state facts sufficient to justify the granting of the relief prayed for." It appears no hearing was had except an argument on the demurrer, when the District Judge, Hon. John L. Sevy, Jr., defendant in this proceeding, and hereinafter called respondent, dismissed the writ in an order as follows:

"The Court finds and concludes as matter of law that it has no jurisdiction or authority to hear or consider said Writ of Habeas Corpus or to make any determination therein with reference to the custody of said child, and that the petition does not state facts sufficient to authorize the issuance of said Writ.

"For the foregoing reasons it is now ordered that said Writ be and the same is hereby dismissed and the Defendants, together with said child, Maxine Jensen, is permitted to go hence without date."

Thereupon plaintiff applied to this court for the writ of mandamus upon which this action is predicated. For convenience the father will hereafter be referred to as plaintiff; the defendant herein as the respondent; and the defendants in the habeas corpus as the grandparents. The following questions are before us:

1. Does a demurrer lie to a writ of habeas corpus, or to the petition for the writ after the writ has been issued?

2. If a demurrer does not lie, and one is filed, may it be considered as an answer and return admitting all the allegation of the petition, and a submission of the issue as to the legality of the restraint upon the allegations of the petition as an agreed statement of the facts?

3. Is mandamus a proper remedy in this cause, or should plaintiff be required to proceed by appeal?

4. If either 1 or 2 be answered in the affirmative, did the District Court err in holding the facts as stated in the petition were not sufficient to entitle plaintiff to any relief?

5. Is the jurisdiction of the Juvenile Court over minors so exclusive as to divest the Supreme Court, or the District Courts of jurisdiction, to inquire by habeas corpus, into the legality of the restraint of a ward of the Juvenile Court, exercised by any person, either under an order of the Juvenile Court or otherwise?

We will examine them seriatim:

1. The written law with respect to habeas corpus in this state is found in Article 8 of the State Constitution, and in Chap. 65 of Title 104, R. S. U. 1933, as construed by this court in prior cases. The statute prescribes the contents of the petition for the writ (Sec. 104-65-1) ; that the writ must issue, "unless it shall appear from the petition itself, or the documents annexed, or the showing of the plaintiff, that the party so applying would not be entitled to any relief." (Sec. 104-65-3). If the court or judge thereof disallows and refuses to issue the writ, he must cause a written statement of his reasons for so doing to be appended to the petition and the same returned to petitioner. See Sec. 104-65-9. The next section (104-65-10) declares that it shall be the duty of a court or judge to issue the writ, though no application is made therefor where he shall have evidence that any person within his jurisdiction is unjustly restrained of his liberty. Sec. 104-65-17 states that any judge who wrongfully and wilfully refuses to allow a writ when proper application has been made shall forfeit to the aggrieved party, $5,000. The writ is to be served upon the person named therein as defendant, or upon any other person having the plaintiff in custody with the same effect as if he had been named defendant. (Secs. 104-65-12 and 13). Then Sec. 104-65-15 provides:

"* * * Service being made, the defendant *must* appear at the proper time and place and *answer* the complaint. He *must* also bring

the body of the plaintiff, or show good cause for not doing so." (Italics added.)

Sec. 104-65-20 reads:

"Upon the *return* of any writ of habeas corpus the court or judge shall, after having given sufficient notice, proceed in a summary manner to hear the matter, and shall dispose of the prisoner as justice may require." (Italics added.)

The statute therefore indicates that the writ *must issue* whenever it shall come to the attention of the court or judge that there is evidence that anyone within his jurisdiction is unjustly deprived of his liberty, whether that be made to appear by proper application or otherwise. The application for the writ is merely an approved way of calling the situation to the attention of the court or judge. In other words, a verified petition embracing the matters set out in Sec. 104-65-1, and which upon its face does not show the petitioner not entitled to relief, imposes upon the court the obligation and duty to issue the writ unless he has reason to doubt the verity of the petition. 25 Am. Jur. p. 238; *Ex parte Milligan,* 4 Wall. 2, 18 L. Ed. 281; *Ex parte Hyde,* C. C., 194 F. 207; *In re Lewis,* C. C., 114 F. 963; *Graves' Case,* 236 Mass. 493, 128 N. E. 867.

"If in doubt, the court grants the writ and disposes of the cause on the return day, when the prisoner is brought before him." *In re Taylor,* 23 Fed. Cas. page 728, 729, No. 13,774, 8 N. Y. Wkly. Dig. 554.

"We know of no law which authorizes either the person against whom the writ is prayed, or any one else, to come into court and object to the issuance of the writ. There is no precedent for an objection of this character. It is a matter to be determined solely by the judge." *Simmons* v. *Georgia Iron, etc., Co.,* 117 Ga. 305, 311, 43 S. E. 780, 783, 61 L. R. A. 739 (quote *Addis* v. *Applegate,* 171 Iowa 150, 154 N. W. 168, 173, Ann. Cas. 1917E, 332).

*Electoral College Case,* 8 Fed. Cas. page 427, No. 4,336, 1 Hughes 571; *Ex parte Dessus,* 9 Porto Rico 128.

"Doubtless there is an obligation to issue the writ of habeas corpus whenever, and as often as, it may be applied for, provided the petition

contains the requisite matter, is in due form, duly authenticated, duly presented, and does not show on its face that the imprisonment, though complained of as illegal, is in fact legal." *Perry* v. *McLendon*, 62 Ga. 598, 604 (per Bleckley, J.).

"It is the duty of the court or judge to whom the application is presented, before issuing the writ, to inspect the application to see if it contains sufficient averments, is in due form of law, and properly subscribed. If it does not, he should refuse to issue the writ. If it does, it is his duty to grant it." *Addis* v. *Applegate*, 171 Iowa 150, 163, 154 N. W. 168, 173, Ann. Cas. 1917E, 332.

The writ should be promptly issued "in behalf of an injured party, when a proper case is presented." *In re Keeler*, 14 Fed. Cas. page 173, No. 7,637, Hemp. 306.

The petition is not a complaint, and does not initiate a proceeding in habeas corpus. Its function is to advise the judge that someone probably is unlawfully or wrongfully detained or restrained of his liberty, to secure the issuance of the writ, and when that is issued the petition has accomplished its purpose;—it is functus officio. *In re Collins*, 151 Cal. 340, 90 P. 827, 91 P. 397, 129 Am. St. Rep. 122, judgment affirmed *Collins* v. *O'Neil*, 214 U. S. 113, 29 S. Ct. 573, 53 L. Ed. 933; *In re Williamson*, 26 Pa. 9, 67 Am. Dec. 374; *Addis* v. *Applegate*, 171 Iowa 150, 154 N. W. 168, Ann. Cas. 1917E, 332; 29 C. J. p. 142; *State ex rel Chase* v. *Calvird*, 324 Mo. 429, 24 S. W. 2d 111; *In re Davenport*, 114 Or. 650, 236 P. 758; 25 Am. Jur. p. 236. The proceeding proper is instituted by the writ of the court commanding the defendant to produce the body, and show by what authority he restrains or detains the body in whose behalf the writ is issued. When the writ has issued, there is nothing on which the court can proceed until the return is made, and until such is done the court can take no action on the writ, *Lowndes County* v. *Leigh*, 69 Miss. 754, 13 So. 854; 15 Am. Eng. Ency. of Law 194; and a return not contradicted is taken as true and case determined in accordance with the facts in the return. *State* v. *Billings*, 55 Minn. 467, 57 N. W. 206, 794, 43 Am. St. Rep. 525; *In re Milburn*, 59 Wis. 24, 17 N. W. 965; *Ex parte Durbin*,

102 Mo. 100, 14 S. W. 821. If no evidence is adduced by either party at the hearing, the return is presumed to be true, and the averments of the petition although not denied or controverted by the return, cannot be considered as admitted. *Ex parte Hunter,* 39 Ala. 560.

However, in proper cases (and that is the usual Federal practice, although seldom state practice) the court, upon presentation of a petition, may issue a rule nisi requiring the person exercising the restraint to show cause why the writ should not issue. *Ex parte Yarbrough,* 110 U. S. 651, 4 S. Ct. 152, 28 L. Ed. 274; *Ex parte King,* D. C., 200 F. 622; *Ex parte Collins,* C. C., 154 F. 980. Where the return to the rule to show cause gives all the essential facts, the case may be disposed of the same as if the writ had issued. *In re Lewis,* C. C., 114 F. 963; *Erickson* v. *Hodges,* 9 Cir., 179 F. 177, 102 C. C. A. 443.

If this return

"is precisely the same that the superintendent would make if the writ of habeas corpus had been served on him, the court here can determine the right of the prisoners to be released on this rule to show cause as correctly and with more convenience in the administration of justice, than if the prisoners were present under the writ in the custody of the superintendent; and such is the practice of this court." *Ex parte Yarbrough,* 110 U. S. 651, 653, 4 S. Ct. 152, 28 L. Ed. 274.

"We take it that under the practice the judge may do either of three things, when a petition for the writ is presented: First. If it appears therefrom that it does not state a cause for the issuance of the writ, and that the prisoner, if produced, would be remanded, he may dismiss it. Of course, the petitioner should have ample opportunity to be heard upon the sufficiency of his petition. Second. He may issue an order to show cause. Third. He may award the writ." *Erickson* v. *Hodges, supra* [179 F. 179, 102 C. C. A. 443].

But when the writ is issued it requires a return by the defendant. Statute cited supra; *People ex rel. Gamaldi* v. *Warden,* 160 App. Div. 480, 145 N. Y. S. 1064; *Isakson* v. *Stevens,* 57 Or. 57, 110 P. 393. This return is not an answer to the petition, but a return to the writ. *In re Moyer,* 35 Colo. 159, 85 P. 190, 12 L. R. A., N. S., 979,

117 Am. St. Rep. 189; *Simmons* v. *Georgia Iron, etc., Co.,* supra; *In re Davenport,* supra. The facts stated in the return, not those in the petition, make the issuable or triable questions. The return thus becomes analogous to a complaint in a civil action. The return may be controverted by the petitioner by filing exceptions thereto or a traverse or denial thereof, or by a motion to discharge the party restrained. *In re Collins, supra; Brooke* v. *Logan,* 112 Ind. 183, 13 N. E. 669, 2 Am. St. Rep. 177. Said the West Virginia court, *Ex parte Mooney,* 26 W. Va. 36, 53 Am. St. Rep. 59:

"The petitioner * * * demurred to the return and moved to quash it as insufficient. In some cases this has been allowed, but the better, and what now seems to be the settled practice is for the petitioner, if he deems the return insufficient to move to discharge the prisoner. On this motion the return is conceded to be true, and unless it shows sufficient cause for the detention of the prisoner he will be discharged."

The return imports verity until impeached, *Stretton* v. *Rudy,* 5 Cir., 176 F. 727, 101 C. C. A. 223. It is presumed to be true until the contrary is shown by the evidence or its effects otherwise avoided. *Montgomery* v. *Hughes,* 4 Ala. App. 245, 58 So. 113. See, also, *Crowley* v. *Christensen,* 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620, where the same rule is laid down as to exceptions or demurrer to the return. *Thorp* v. *Metzger,* 77 Wash. 62, 137 P. 330; *Calhoun* v. *Metzger,* 77 Wash. 698, 137 P. 332. Issue of fact on a return may be traversed by denial or allegations of other facts. 9 Ency. Pl. & Prac. 1041, also 1052 and 1053. *Frank* v. *Mangum,* 237 U. S. 309, 35 S. Ct. 582, 583, 59 L. Ed. 969; *Ex parte Cuddy,* 131 U. S. 280, 33 L. Ed. 154, 9 S. Ct. 703; *Ex parte Davis,* 333 Mo. 262, 62 S. W. 2d 1086, 89 A. L. R. 589; 9 Ency. Pl. & Prac. 1040. If the facts alleged in the return differ materially from those set forth in the petition, the parties may, by stipulation, treat the petition as a traverse of the return. After a return to the writ is filed the court or judge must pass upon all questions of both

law and fact, and determine the ultimate question whether the party is wrongfully restrained of his liberty. *Addis* v. *Applegate,* supra. It is held that the sufficiency of the petition should be tested, if at all, by a motion to quash the writ, not by demurrer for want of facts, nor by assignment of error in the appellate court. *McGlennan* v. *Margowski,* 90 Ind. 150; *Milligan* v. *State,* 97 Ind. 355; *Willis* v. *Bayles,* 105 Ind. 363, 5 N. E. 8; *Rust* v. *Vanvacter,* 9 W. Va. 600. We are aware that in *Nickolopolous* v. *Emery,* 59 Utah 588, 206 P. 284, is found the statement: "The facts alleged are admitted by demurrer." The file in that case discloses that defendant filed an answer to the writ and then a motion to quash and dismiss the writ.

The defendant should file a return to the writ, and in some states may then move to quash the writ as improperly issued. 9 Ency. Pl. & Prac., 1039. Such a motion admits all the facts alleged in the petition, and if such facts clearly show the detention was lawful the writ should be quashed. *Mathews* v. *Swatts,* 16 Ga. App. 208, 84 S. E. 980. Such a motion, where allowed, tests the sufficiency of the application, the same as a hearing on a rule nisi to show cause and takes the petition as true. *Willis* v. *Willis,* 165 Ind. 325, 75 N. E. 653; *Hardin* v. *Hardin,* 168 Ind. 352, 81 N. E. 60; *State ex rel. Stack* v. *Grimm,* 239 Mo. 340, 143 S. W. 450, Ann. Cas. 1913B, 1188. But such motion to quash will not be granted unless it is clear from the petition that petitioner cannot obtain release but must be remanded even after hearing. *Addis* v. *Applegate,* supra; *People* v. *Moss,* 187 N. Y. 410, 419, 80 N. E. 383, 11 L. R. A., N. S., 528, 10 Ann. Cas. 309; *Ex parte Whicker,* 187 Mo. App. 96, 173 S. W. 38; *People ex rel. Jenkins* v. *Kuhne,* 57 Misc. 30, 107 N. Y. S. 1020; *People ex rel. Kuhne* v. *Burr,* 127 App. Div. 907, 111 N. Y. S. 1136; *Ex parte Eley,* 9 Okl. Cr. 76, 130 P. 821; *Ex parte Wills,* 12 Okl. Cr. 596, 148 P. 1069; *Wilkinson* v. *Lee,* 138 Ga. 360, 75 S. E. 477, 42 L. R. A., N. S., 1013. The matters properly triable on habeas corpus arise on the return and the traverse thereto. *Merri-*

*man* v. *Morgan*, 7 Or. 68, 69; *In re Poole*, 9 D. C. 583, 2 McArthur 583, 29 Am. Rep. 628; 9 Ency. Pl. & Prac., 1064.

We hold therefore, that once the writ has been issued, a demurrer to the petition for the writ does not lie. This is in accord with the great weight of authority.

2. Respondent argues that if demurrer does not lie to the petition, or if he were in error with respect to his ruling thereon, the demurrer should be considered as a return in the nature of an admission of the allegations of the petition, and his order dismissing the writ and remanding the child to the custody of the defendants in the habeas corpus action, should be upheld as a ruling on the merits. That since the grandparents produced the body in court at the time they demurred, and the matter was argued by counsel on both sides, and submitted to the court, the demurrer to the petition should be regarded as a return to the writ, admitting all the allegations contained in the petition as being a correct statement of the grounds, cause and nature of the detention and restraint, and being plaintiff's statement of facts, to which defendants in that action agree, the demurrer to petition constituted it a stipulation of facts and a submission of the cause upon the merits.

We have already held that the petition for the writ is functus officio, once the writ has issued. But since there seems to be but little dispute on the facts, and it is conceded that the petition for the writ correctly sets forth the detention and restraint and the reasons therefore, it seems probable that a return to the writ would in the main present the same facts as the petition. We deem it proper to discuss the matter for the future guidance of the courts and the parties. The petition for the writ of habeas corpus meets definitely, clearly and accurately every requirement set forth in Sec. 104-65-1, R. S. U. 1933 as to what the petition for the writ must state. It also sets forth facts that would constitute the answer or return to the writ. Examining its contents it sets forth that Maxine Jensen is a child eight

years of age, and petitioner is her natural father; that her mother is dead and she is under the control and dominion of the defendants; that petitioner, after June 30, 1942, demanded from the defendants the custody of his child, which demand was refused; that petitioner has remarried and has a suitable home in a proper atmosphere for the rearing of the child; that both petitioner and his wife are in every way fit, proper, and suitable persons to have the custody of said child; that in 1940, after petitioner's wife died, and before he remarried, said child was, by the Juvenile Court, with his consent, found dependent and placed temporarily with the grandparents, defendants in the habeas corpus proceedings; that in 1941, the Juvenile Court made an order ordering, directing, and awarding to petitioner the custody of said child after June 30, 1942; that under said order petitioner has demanded the child, and the grandparents refuse to surrender the child to him, in defiance of the order, and pursuant to and under such order he seeks the writ of habeas corpus to obtain the child. These facts state an almost ideally perfect case for the issuance of a writ of habeas corpus. Nothing could be added that would strengthen the case for the issuance of a writ. There can be no question based upon such allegations of the petitioners as to the jurisdiction of this court to issue the writ, or of the District Court to hear the same. Furthermore, since this court issued the writ, and directed the District Court to hear it; and made it returnable before the District Court, we do not believe the District Judge intended to say this court had no jurisdiction to issue a writ of habeas corpus.

We believe the order of the District Judge, (defendant herein) must be interpreted to mean, as indicated in his answer "that he ought not to take jurisdiction [clearly meaning 'proceed'] to determine the custody of said child, and said matter ought in wisdom—to be left to the determination of the Juvenile Court. The District Court was mindful of the provisions of Sec. 14-7-4, R. S. U. 1933, which reads:

"The juvenile court shall have *exclusive original* jurisdiction in all cases relating to the neglect, dependency and delinquency of children * * *, and the *custody*, detention, guardianship of the person * * * of such * * * children." (Italics added.)

And subdivision (3) of the section which reads:

"When jurisdiction shall have been acquired by the court in the case of any child, such child shall continue for the purposes of such case under the jurisdiction of the court * * *."

"(4) *Nothing* herein contained *shall deprive other courts of the right to determine the custody of children upon writs of habeas corpus* * * *. Such other courts *may, however, decline to pass upon questions of custody* and may certify the same to the juvenile court for hearing and determination or recommendation." (Italics added.)

and that pursuant to such statute he intended the order to be that he "declined to pass upon questions of custody" and left the same for determination by the Juvenile Court. Thereunder he could have certified this cause to the Juvenile Court for determination and recommendation as to custody. But the District Judge was confronted with another problem. On habeas corpus he was charged with the duty of determining not merely the custody of a juvenile, based upon questions of its welfare but also the question of the legality of its restraint or detention. This latter duty it could not refer or certify to the Juvenile Court. We now refer back to the pleadings. As indicated above, the petition for the writ of habeas corpus which the parties before the District Court treated as the equivalent of a return, or a stipulation of the facts, in addition to the facts recited above, set out that the grandparents justified their detention of the child under a writ or order of the Juvenile Court, a copy of which was attached. Since all the facts that could be shown by a return and answer and the court order or process under which the grandparents detained the child were pleaded and before the court, and counsel were fully heard in respect thereto, nothing more could be gained by requiring the grandparents to file another paper to set forth

the same justification. An attempt to demur may not always have that effect, but here the record shows that the parties treated and presented the matter on the theory that the petition should be considered as a stipulation of fact constituting a return to the writ without a traverse; that it was agreed that the grandparents justified solely upon the order of the Juvenile Court and such order was the nub of the controversy. The validity or legal effect of that order or writ must therefore be passed upon by the District Court. Petitioner contended that he claimed custody, under and by virtue of the order, not in derogation of it. But the order revealed that the right of petitioner to the custody of his child had not been finally determined by the Juvenile Court. That order which was in its nature interlocutory the court specifically retaining jurisdiction, committed the custody of the child to the defendants in the habeas corpus proceeding until June, 1942, at which time, upon a showing by petitioner that he had in the meantime deported himself becomingly the court would award him the custody of the child. There is no question as to the power of Juvenile Court to make such an order or as to the validity thereof. The District Court concluded that since petitioner admitted he had not made a showing to the Juvenile Court as provided in its order, he was not entitled to custody under the order of the Juvenile Court; and since the order itself was valid, he was not entitled to custody in derogation of it. It held therefor that the detention of the child by the grandparents was lawful and under valid legal process; that the right to modify the order of the Juvenile Court lay only in that court or in the Supreme Court by appeal, and therefor petitioner was not entitled to have the child discharged from the custody of its grandparents. In this we think the District Court was right and the alternative writ of mandamus is recalled and quashed. Costs to defendant.

MOFFAT, J., concurs.

WOLFE, Chief Justice (concurring in the result).

I concur in the result of the opinion of Mr. Justice LARSON and also in the reasoning and legal propositions up to the point in the opinion paragraph beginning with the words "We have already held that the petition for the writ is functus officio, once the writ has issued." The opinion of Judge Hoyt expresses my opinion on the reason and interpretation of the action of the District Court in refusing to take jurisdiction of the question raised by the writ of habeas corpus and the intention of the District Court in dismissing the writ. It also expresses my opinion that where the Juvenile Court has obtained jurisdiction of a child because of neglect, dependency or delinquency, the District Court must dismiss the writ. It is not discretionary. The orders of the Juvenile Court are appealed to this court under Sec. 14-7-33, Utah Code Ann. 1943, and the judgment of the Juvenile Court cannot be overturned by suing out a writ and obtaining a hearing on the very same issue by that method either in the District or the Supreme Court.

HOYT, District Judge (concurring in the result).

I concur in the result reached in the foregoing opinion and with the holding that the judgment of the District Court in the habeas corpus proceeding ought not to be construed as a refusal to hear the matter. I think it reasonably clear that what the court did was to hear the habeas corpus matter and, finding that the child involved had been taken into the custody of the Juvenile Court, because of neglect or misconduct of the father (petitioner) and that the juvenile court had retained jurisdiction of the matter, the district court concluded, and I think rightly, that it had no jurisdiction to take the child from the custody of the juvenile court or to determine the question of the father's fitness to have his child returned to him. I also think the petitioner was mistaken in his assumption that he could not go into the

juvenile court for a hearing of the question as to whether he had complied with the requirements of the former order of the juvenile court. The fact that he had appealed from that order and that the appeal was pending, undecided, before the supreme court, would not prevent him from applying to the juvenile court for custody of his child upon a showing of change of circumstances and compliance with the conditions which that court had prescribed as prerequisite to having the child returned to him. Sec. 14-7-34 provides that an appeal shall not discharge a child from custody of the juvenile court. It was said in *Stoker* v. *Gowans*, 45 Utah 556, 562, 147 P. 911, 913, Ann. Cas. 1916E, 1025:

"We thus have an act which practically confers parental powers and duties upon the juvenile court."

Also:

"The juvenile court, after the original notice, always retained jurisdiction of Fern, and, in view that it had found that the mother was an unfit person to have custody and control of her, and had thus substituted itself as her custodian, under the law (*Mill* v. *Brown*, 31 Utah 473, 88 P. 609, 120 Am. St. Rep. 935), we cannot see how the court exceeded its power or jurisdiction" (in acting thereafter without again giving notice to the mother).

I do not agree with the apparent holding in the opinion of Mr. Justice LARSON that the district court merely decided that "said matter ought in wisdom to be left to the determination of the juvenile court." I think it was the intention of the district court to hold that it had no jurisdiction to hear and determine the question of the father's fitness and qualification to have his child returned to him. I cannot agree with the holding inferable from the opinion that the district court could have proceeded to hear and determine that question. In my opinion it was not a matter of discretion. I think the legislature intended to confer exclusive original jurisdiction upon the juvenile court to determine such questions in every case wherein the state had become a party by the juvenile court

taking custody of a child because of neglect or delinquency. The provisions of subsection 4 of section 14-7-4 R. S. relating to powers of courts to determine questions of custody in habeas corpus proceedings should not, in my opinion, be construed to apply to cases in which the state has become a party by intervention of the juvenile court. Unless we so construe it we cannot reasonably give effect to the provision of subsection 3 of section 14-7-4 that

"When jurisdiction shall have been acquired by the court in the case of any child, such child shall continue for the purposes of such case under the jurisdiction of the court until he becomes twenty-one years of age, unless discharged prior thereto or unless he is committed to the state industrial school or to the district court as hereinafter provided."

The legislature has power to give to the juvenile court exclusive jurisdiction of cases of neglect or delinquency of children.

"In this country the several states stand, with reference to the persons and property of infants, in the situation of parens patriae. The state as parens patriae is authorized to legislate for the protection, care, custody, and maintenance of children within its jurisdiction." 27 Am. J. 823.

"Resident minor children are wards of the state in whom the government is interested." *Geary* v. *Geary*, 102 Neb. 511, 167 N. W. 778, 779, 20 A. L. R. 809.

"While there are certain limitations in respect to certain powers as applied to certain courts, the Constitution wisely refrains from conferring exclusive original jurisdiction upon any of the courts, but vests such original jurisdiction in all the courts to be apportioned and exercised as the Legislature may direct. There can be no valid reason, therefore, to dispute the right of the Legislature to create a court or courts wherein juvenile offenders or delinquents may be dealt with although they were formerly dealth with in other courts. Nor does the fact that in cities of the first and second classes juvenile courts are given exclusive jurisdiction over juvenile offenders in any way offend against any constitutional provision." *Mill* v. *Brown*, 31 Utah 473, 88 P. 609, 611, 120 Am. St. Rep. 935.

The right to the writ of habeas corpus is in no way infringed by legislation giving the juvenile court exclusive

jurisdiction in all cases relating to the delinquency or neglect of children. It is a sufficient answer to a writ of habeas corpus to show that a child is held pursuant to the terms of a valid order made after due notice and hearing by the juvenile court in a case in which the juvenile court had jurisdiction. The petition in this case, which, under the proceedings in the habeas corpus case must be considered as having been adopted by the parties as an agreed statement of facts, showed affirmatively that the juvenile court had taken and retained jurisdiction of the case relating to the neglect of the petitioner's child. That case definitely involved and included the question of the father's fitness to have the child returned to him. The petitioner alleged that he had now complied with the requirements of the juvenile court order and that he was thereby entitled to take his child from the defendants. Such an allegation did not overcome the recital that the juvenile court had taken custody of the child because of his former neglect. His petition showed affirmatively that the district court did not have jurisdiction to award him custody of the child. To hold otherwise is to hold that by reason of subsection 4 of Section 14-7-4, R. S. the district courts have concurrent jurisdiction with the juvenile courts in cases of alleged neglect of children. I cannot believe that it was so intended.

McDONOUGH, Justice.

I concur in the views expressed in the concurring opinion of Judge HOYT.