STATE EX REL. ALBERT BAKER v. L. F. UTECHT.[1,2]

January 4, 1946.

No. 33,989.

¹Reported in 21 N. W. (2d) 328.

²*Certiorari* denied by U. S. Supreme Court April 22, 1946.

See, 218 Minn. 553, 16 N. W. (2d) 750.

*Albert Baker* and *Edgar P. Willcuts,* for relator.

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for respondent.

MATSON, JUSTICE.

Upon relator's appeal from an order of the district court discharging a writ of *habeas corpus* issued in his behalf, respondent moves to quash said writ "upon the ground that the record shows no reason for allowing said writ of *habeas corpus* herein or for the discharge of the petitioner, and that the judgment of conviction under which the petitioner is now held a prisoner in the state prison cannot be collaterally attacked in a *habeas corpus* proceeding."

Relator was convicted of the crime of sodomy on May 21, 1940, and sentenced to the state prison at Stillwater, where he is now confined.

"By a letter dated November 26, 1942, relator requested the issuance of a writ of *habeas corpus* from this court to determine the legality of his imprisonment in the state penitentiary. Although on its face his application for a writ showed that he was not entitled to it, we nevertheless requested a member of our bar to make an impartial investigation as to the facts with reference to relator's incarceration. Upon his report, it appeared that he was not un-

justly or unconstitutionally restrained of his liberty, and, since his application did not state grounds for relief, we refused to issue the writ." State ex rel. Baker v. Utecht, 218 Minn. 553, 16 N. W. (2d) 750, 751.

On July 21, 1944, relator petitioned the district court of Washington county for a writ of *habeas corpus* on the ground, among others not here pertinent, that he had been denied a public trial, as guaranteed by Minn. Const. art. 1, § 6, and U. S. Const. Amend. VI, and in violation of the due process clauses of both Minn. Const. art. 1, § 7, and U. S. Const. Amend. XIV. Specifically, relator's petition alleges as a fact "that the trial judge excluded the public from the trial during the time the alleged victim gave her testimony," and, further, "that the judge told the public to leave the room and instructed the bailiffs to bar the public from entering the room until the victim's testimony was ended."

In connection with the aforesaid appeal, relator petitioned this court for an assignment of counsel. His request for the appointment of counsel was denied. State ex rel. Baker v. Utecht, 218 Minn. 553, 16 N. W. (2d) 750. On February 20, 1945, this court appointed a referee in this matter "to take and report to this court the evidence which the parties desire to submit herein without any findings as to the facts or the law."

A motion to quash a writ of *habeas corpus* serves only four purposes: (1) To set aside a writ obtained through fraud; (2) to determine whether there has been substantial compliance with the procedural requirements of the statute governing the issuance of the writ; (3) to determine if the matter is *res judicata;* and (4) to serve as a demurrer to test the sufficiency of the allegations of relator's petition. 25 Am. Jur., Habeas Corpus, §§ 130 and 136; State ex rel. Chase v. Calvird, 324 Mo. 429, 24 S. W. (2d) 111; In re Gilstrap, 171 Cal. 108, 152 P. 42, Ann. Cas. 1917A, 1086; Bleakley v. Barclay, 75 Kan. 462, 89 P. 906, 10 L.R.A. (N.S.) 230; Jensen v. Sevy, 103 Utah 220, 237-238, 134 P. (2d) 1081, 1089; Hardin v. Hardin, 168 Ind. 352, 81 N. E. 60. See, State ex rel. DuFault v. Utecht, 220 Minn. 431, 19 N. W. (2d) 706. Our deci-

sions holding to the contrary are expressly overruled. A motion to quash a writ admits all the facts alleged in the petition. "* * * such motion to quash will not be granted unless it is clear from the petition that petitioner cannot obtain release but must be remanded even after hearing." Jensen v. Sevy, 103 Utah 230, 134 P. (2d) 1086, *supra.* The petition must be liberally construed in favor of the liberty of the citizen. People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383, 11 L.R.A.(N.S.) 528, 10 Ann. Cas. 309.

Obviously, in the instant case, the motion to quash brings before us only the question as to whether the allegations of relator's petition, admitted as true for the purposes of the motion, are sufficient to justify the issuance of the writ. Although relator's petition is crudely drawn, consisting for the most part of argumentative statements and mere conclusions of law, nevertheless it does, in our opinion, raise the issue of whether he was accorded a public trial.

"Questions growing out of an alleged illegal restraint of a person's liberty * . * * impose upon the judiciary the duty of instituting a careful and painstaking investigation into the cause of the detention, and, if it be shown to be illegal, the courts should not be too astute in finding technical objections to the manner in which the legality of the restraint is called in question." Simmons v. Georgia Iron and Coal Co. 117 Ga. 305, 308, 43 S. E. 780, 781, 61 L. R. A. 739, 741; 25 Am. Jur., Habeas Corpus, § 136.

■ Relator alleges that he has been denied a public trial as guaranteed by U. S. Const. Amend. VI. It is elementary that this amendment does not apply to a state criminal prosecution. Gaines v. Washington, 277 U. S. 81, 85, 48 S. Ct. 468, 469, 72 L. ed. 793, 795.[2]

■ We need only consider whether there has been a denial of public trial as guaranteed by Minn. Const. art. 1, § 6, so as to

[2]But see, Betts v. Brady, 316 U. S. 455, 461, 62 S. Ct. 1252, 1256, 86 L. ed. 1595, 1601, wherein the court intimates that under certain extraordinary circumstances a denial by a state of rights or privileges embodied in any of the first eight amendments may constitute a violation of due process of law under the Fourteenth Amendment. See, Annotation, 146 A. L. R. 403, 404.

deprive relator of due process of law in violation of U. S. Const. Amend. XIV, as well as of Minn. Const. art. 1, § 7. Accepting as true the allegation that the court excluded the public in its entirety from the courtroom *"during the time the alleged victim gave her testimony"* (italics supplied), we face a situation where it is necessary to examine the record to determine if so sweeping an order of exclusion was justified under the circumstances. Although by his allegations relator admits that the exclusion was only temporary, nevertheless the order may have been too broad in its application to the entire public. It is only under very unusual circumstances that the preservation of order in the courtroom or of public morals may justify the temporary exclusion of some part or all of the general public. Where the evidence, however, relates to indecent or immoral matters, persons of immature years may usually be temporarily excluded. Likewise, for the purpose of alleviating the embarrassment of a witness, especially one of immature years, who is called upon to testify to matters of a disgusting and salacious character, it may be justifiable to exclude spectators temporarily. It is difficult to conceive of a situation where, in the interest of public morals, it is justifiable to exclude, without any exceptions, the *entire* public, even temporarily. The power to exclude the public should be exercised with extreme caution to insure that accused is not thereby deprived of the presence, aid, or counsel of any person whose presence might be of advantage to him and to insure that he is not in any other manner prejudiced thereby. It follows that it is of the utmost importance for the court to use great care to have the record show the manner of, the extent to which, and the reason for the exercise of the power. Likewise, any waiver of a public trial by accused at any stage of the proceedings should be incorporated into the record. In this proceeding, we are not in a position to ascertain if the court's order transgressed the permissible limits upon the right to a public trial.[3]

[3] 35 Minn. L. Rev. 554; 14 Am. Jur., Criminal Law, § 141; Rottschaefer, Constitutional Law, § 326, pp. 794, 795; State v. Callahan, 100 Minn. 63,

■ *Habeas corpus* "may not be used as a substitute for a writ of error or appeal, or as a cover for a collateral attack upon a judgment of a competent tribunal which had jurisdiction of the subject matter and of the person of the defendant. Nor does the fact that petitioner has permitted the time to elapse for an appeal or writ of error give him a right to *habeas corpus* as a substitute." State ex rel. Dunlap v. Utecht, 206 Minn. 41, 45, 287 N. W. 229, 231; 25 Am. Jur., Habeas Corpus, §§ 13 and 14.

In State ex rel. Dunlap v. Utecht, 206 Minn. 41, 46, 287 N. W. 229, 232, we held:

"If the trial court had jurisdiction of the offense and of the defendant, it is only where extraordinary circumstances surrounding the trial make it a sham and a pretense rather than a real judicial proceeding that *habeas corpus* will lie on the ground that the judgment is a nullity for want of due process, and this is true even though there is a claim of denial of constitutional rights."

See, State ex rel. Baker v. Utecht, 218 Minn. 553, 556, 16 N. W. (2d) 750, 752; Goto v. Lane, 265 U. S. 393, 44 S. Ct. 525, 68 L. ed. 1070; Waley v. Johnston, 316 U. S. 101, 62 S. Ct. 964, 86 L. ed. 1302; Ex parte Siebold, 100 U. S. 371, 25 L. ed. 717.

In the absence of a denial of due process of law, whereby the court has lost its jurisdiction and its judgment is void and not merely voidable, a judgment, though otherwise erroneous, cannot be attacked collaterally under a writ of *habeas corpus*. See, In Matter of Horner, 19 Wash. (2d) 51, 141 P. (2d) 151.

■ It is not every denial of constitutional rights that violates the due process clause of the Fourteenth Amendment so as to deprive the trial court of its jurisdiction to proceed and thereby render its judgment void and subject to a collateral attack in a

110 N. W. 342; *cf.* Tanksley v. United States (9 Cir.) 145 F. (2d) 58, 156 A. L. R. 257, with Reagan v. United States (9 Cir.) 202 F. 488, 44 L.R.A.(N.S.) 583; see, People v. Hartman, 103 Cal. 242, 244, 37 P. 153, 154, 42 A. S. R. 108; Gaines v. Washington, 277 U. S. 81, 48 S. Ct. 468, 72 L. ed. 793; Sir Matthew Hale, History of the Common Law of England, ç. XII (Runnington's ed.) pp. 433 and 435; 1 Cooley, Constitutional Limitations (8 ed.) p. 647; Blackstone (10 ed.) p. 372.

*habeas corpus* proceeding. The denial of certain constitutional rights, *where the right to due process of law is left unimpaired,* is not fatal to the jurisdiction of the court, and the error resulting from such denial is to be corrected through appeal and not by resorting to the extraordinary remedy of *habeas corpus.* Do we have here a denial of a constitutional right involving a violation of the due process clause of the Fourteenth Amendment? It is not enough to determine that the right to a public trial has been denied. We must ascertain if such denial also constituted, or was accompanied by, a deprivation of due process of law. Certain constitutional guarantees by their very nature are intertwined with the due process clause and normally cannot be separated. Other constitutional guarantees stand on a different footing, and their denial does not necessarily result in a violation of due process. In the instant case, assuming that there was in fact a denial of the right to a public trial, relator, who by his petition admits that he was represented by counsel, nevertheless had available an effective remedy through appeal. Regardless of what error, if any, had been made as to the requirements of public trial, relator still enjoyed the benefits of due process of law through the timely and proper exercise of his right to appeal. The doors to the corrective processes of our judicial system were open to him as a guarantee that he should not, against his own free will, be denied of any of the necessary incidents of a fair trial. If he had been denied the constitutional right to the benefit of counsel, as in the case of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. ed. 1461, 146 A. L. R. 357, then we would have had an entirely different situation, in that his right of due process might have been nullified through his ignorance as a layman in not knowing how to assert his right of appeal in a timely and proper manner. The purpose of the guarantee of the right to counsel is to protect accused from a conviction resulting from his own ignorance of legal and constitutional rights. Smith v. O'Grady, 312 U. S. 329, 61 S. Ct. 572, 85 L. ed. 859; Williams v. Kaiser, 323 U. S. 471, 65 S. Ct. 363, 89 L. ed. 398. Without the benefit of counsel, the accused, ignorant of his rights, would in

effect stand deprived of the protective mantle of due process of law. The failure to provide counsel, unless intelligently waived, is a failure to complete the court and, as a violation of the due process clause, terminates the court's jurisdiction and stands as a bar to a valid conviction. Johnson v. Zerbst, *supra;* Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. ed. 158, 84 A. L. R. 527; Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 59 L. ed. 969.[4] By contrast, however, the denial of the right to a public trial, where the accused enjoys the benefit of competent counsel at every stage of the proceeding, does not *ipso facto* involve a violation of the due process clause and operate as a jurisdictional bar to a valid judgment of conviction. In the latter case, the court is complete and the accused enjoys ample corrective processes through appeal. Applying these principles to the case at hand, we find no violation of the due process clause of either the federal or state constitutions. Clearly, the court had jurisdiction of the subject matter and of the person of relator, and the sentence imposed was not in excess of its power. Goto v. Lane, 265 U. S. 393, 44 S. Ct. 525, 68 L. ed. 1070, *supra.* See, In Matter of Horner, 19 Wash. (2d) 51, 141 P. (2d) 151. He enjoyed effective means of preserving his rights. The order of the court providing for a temporary exclusion of the public was of record and open to consideration and review on appeal. Waley v. Johnston, 316 U. S. 101, 62 S. Ct. 964, 86 L. ed. 1302; House v. Mayo, 324 U. S. 42, 65 S. Ct. 517, 89 L. ed. 739; Hawk v. Olson, — U. S. —, 66 S. Ct. 116, 90 L. ed.—. Relator had the benefit of competent counsel of his own choosing at every stage of the proceeding. His right to counsel was not impaired or prejudiced in the slightest degree by the subsequent act of the trial court in officially appointing such counsel to aid him. Ob-

[4]Bowen v. Johnston, 306 U. S. 19, 23, 24, 59 S. Ct. 442, 444, 445, 83 L. ed. 455, 459, has been cited to the effect that if there be a denial of constitutional rights, although there be no loss of jurisdiction, the remedy of *habeas corpus* is available. But, see, Graham v. Squier (9 Cir.) 132 F. (2d) 681, 683, wherein the court comments on the language employed in the foregoing case. See, United States ex rel. Innes v. Hiatt (3 Cir.) 141 F. (2d) 664, 665, 666.

viously, the trial court made such appointment as a precautionary measure for relator's benefit and probably for the specific purpose of allowing such lawyer to be compensated by the state.

In his brief on this appeal, relator frankly states that the record of the trial court shows that his counsel and the county attorney conferred with the judge immediately prior to the judge's order temporarily excluding the public from the trial. It is significant that neither relator nor his counsel made any objection to the court's order. Although the record is not before us in this proceeding, the presumption of regularity which envelopes a judgment would justify (although not necessary here to a determination of this matter) the inference that relator's counsel consented to the court's order of exclusion. Whatever his counsel in fact did do, relator admits by his pleading that he made no objection during the trial, and he made no effort thereafter to appeal. The corrective processes, as part of his right to due process of law, were his for the asking. It is to be presumed that relator, acting through a duly authorized and competent attorney of his own choice, acted advisedly for his own best interest. See, Graham v. Squier (9 Cir.) 132 F. (2d) 681. Relator, having of his own volition elected not to avail himself of the right of appeal, cannot now, when the time for appeal has expired, resort to the extraordinary remedy of *habeas corpus* as a substitute. He has advanced no legitimate reason why he did not pursue the remedy at hand in a timely and proper manner. See, In re Lincoln, 202 U. S. 178, 26 S. Ct. 602, 50 L. ed. 984.

Motion to quash writ is granted.

Mr. Justice Magney took no part in the consideration or decision of this case.