**UNITED STATES of America ex rel. Rudolph SMALLWOOD, Petitioner,**

v.

**The Honorable J. E. LaVALLE, Superintendent of Clinton Correctional Facility, Dannemora, Respondent.**

No. 73 C 494.

United States District Court, E. D. New York.

May 30, 1974.

Richard P. Fennelly, Scarsdale, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., of N. Y. by Jerold Probst, Deputy Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner, Rudolph Smallwood, is presently released on parole from Clinton Correctional Facility, Dannemora, New York, where he had been serving an eight-year sentence for manslaughter after his conviction in Supreme Court, Kings County, on August 20, 1970. Petitioner seeks a writ of habeas corpus, alleging he was denied a public trial in violation of his Sixth and Fourteenth Amendment rights. The New York Court of Appeals unanimously affirmed his conviction without opinion on November 2, 1972. Petitioner's claim was fully briefed and argued there, and it appears that petitioner meets in all respects the essential jurisdiction and exhaustion requirements prerequisite to relief in this court. 28 U.S.C. §§ 2241, 2254. The court has reviewed petitioner's application, including all submissions by his counsel and the Deputy Assistant Attorney General, has considered the facts brought out by counsel at oral argument on the application, and has concluded for the reasons which follow that the application must be denied.

The material facts are not in dispute. The homicide for which petitioner was charged was that of Micker Johnson, who was found dead from a single gunshot wound on the streets of Brooklyn about 5:00 a. m. on September 29, 1968. There was testimony which placed the deceased, on the morning of his death, at a party where he had had words with the petitioner, the deceased having accused petitioner of cheating at cards and having called him a "mother-f----r." Petitioner, decedent and other witnesses left the party shortly before 5:00 a. m. Petitioner and various defense witnesses testified that petitioner immediately left by car from the vicinity where the party was held and the decedent was found, not returning until around 7:00 a. m.

The sole eyewitness to the crime, and the only witness able to identify petitioner as the perpetrator, was Mary Ann

Boyd, who was then fifteen or sixteen years old and four months pregnant. She testified that from her bedroom window on the morning in question, right after being awakened by a gunshot, she saw petitioner standing with a gun in his hand over the body that proved to be the decedent. She also testified that petitioner said, "I'll kill him," in response to a statement from a companion (whom she also identified) who had said, "Don't shoot him no more."

The foregoing makes clear (and the parties do not dispute it) that Mary Ann Boyd was the State's principal witness, without whom a conviction was impossible. During her entire testimony, and only for her testimony, the court ordered the public excluded from the trial, and the six spectators then present left the courtroom. The circumstances surrounding this exclusion, as reported in the record, and the only basis for the trial court's action, are set forth in the margin.[1] Petitioner claims that this exclusion violated his right to a public trial under the Sixth and Fourteenth Amendments, alleging that the trial court acted without a showing of any cogent reason for the exclusion of *any* of the six spectators.

The State of New York has long recognized by statute the right to a public trial and that it is one made applicable to the States by reason of the Fourteenth Amendment. People v. Hinton, 31 N.Y.2d 71, 73, 334 N.Y.S.2d 885, 887, 286 N.E.2d 265, 266 (1972). *See also* Argersinger v. Hamlin, 407 U.S. 25, 27–28, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948); United States ex rel. Bruno v. Herold, 408 F.2d 125, 131–132 (2 Cir. 1969) (dissenting opinion). Hence, petitioner's application meets the additional limitation that grounds for federal habeas relief exist only when the form of custody is also "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

1. "Mr. Schmier: My next witness is certified by me and my experience as a lawyer as the principal witness of the case, an eyewitness to the murder, the only eyewitness to the murder.

"She has told me many times, which I have not reported to the Court—

"The Court: How old is this witness?

"Mr. Schmier: She is fifteen—she was fifteen at the time of the crime. She may now be sixteen.

"We have had innumerable talks with her in which each one has been difficult because she is afraid. She lives on the very block with the defendant. She has been spoken to by the defendant. The defendant's friends—we are not claiming that they threatened her or anything like that, but they consistently said, 'You are going to hurt our friend.'

"Now she is here. We have secreted her in the back away from the public, which is our prerogative.

"She has used the private bathroom. The girl is frightened. She is four months pregnant. Her mother said that she was not going to have her testify, because the girl could lose the baby. I assured her she would be given the highest consideration and treatment in the interest of justice, and one of the rare times I am doing —I am imploring the Court to clear the courtroom while she testifies, because there are friends of the defendant in the courtroom, and she is afraid to testify in front of them.

"The Court: What do you say, Mr. Kaplan?

"Mr. Kaplan: Judge, I would have to object to this because I maintain this is an open forum. I never heard anything about any threats or anything as far as that goes.

"The Court: Let the record show that presently seated in the spectator section of the courtroom are six people. Three of these are colored. One of the persons I recognize as a regular court onlooker. The others we don't know about.

"Let the record also show there's no one else in the courtroom.

"Mr. Schmier: Judge, I hate to interrupt you. The colored man sitting in the courtroom, you may not recognize him, but you gave him permission yesterday to talk to the defendant.

"Mr. Kaplan: I admit—

"The Court: The Court will exercise its discretion and ask all spectators to leave the courtroom while this witness testifies.

"You have an exception.

"Mr. Kaplan: Thank you.

"The Court: Clear the courtroom.

"(All spectators leave the courtroom)" Respondent's Affidavit in Opposition at 3–4.

■ Respondent correctly points out that the right to a public trial is nevertheless not a "limitless imperative." The right "has always been interpreted as being subject to the trial judge's power to keep order in the courtroom," or "to prevent unnecessary pressures or embarrassment to a witness . . ." United States ex rel. Orlando v. Fay, 350 F. 2d 967, 971 (2 Cir. 1965). The Second Circuit has also strongly suggested that the right of public trial does not extend to the right to have present in the courtroom "persons who might seriously have affected the testimony of the witness on the stand." United States ex rel. Bruno v. Herold, *supra*, 408 F.2d at 129.

But the court does not read petitioner's claim broadly enough to argue that "all of the public is entitled under all circumstrances to be present during the trial." United States ex rel. Orlando v. Fay, *supra.* Instead petitioner claims that exclusion of spectators, even if proper in some circumstances on a selective basis, is constitutionally impermissible (1) when done indiscriminately as to the *entire* public present in the courtroom; (2) when the period of exclusion includes all the testimony of the key prosecution witness in the case; and (3) when there is no pre-exclusion inquiry by the court "to identify those persons or classes of persons who should be removed from the courtroom in the interests of justice." [2] Respondent answers that (1) under certain circumstances, including this case, exclusion of *all* of the public for *some* of the time is permissible; (2) petitioner did not ask for such a pre-exclusion inquiry, voicing only a general objection to the exclusion of the public; and (3) in any event, no such inquiry was constitutionally required since the exclusion order did not go beyond the purpose meant to be served by it.

Cases dealing with the right of public trial have focused on its infringement by exclusion of public spectators for a number of reasons: overcrowding of the courtroom, possibilities of disturbances or disorder among the spectators, threats of in-court retaliation against the witness testifying, testimony concerning indecent or immoral matters, and the prevention of the emotional disturbance or embarrassment of a witness in order to facilitate the eliciting of testimony. *See generally* 21 Am.Jur.2d, Criminal Law §§ 257–70 (1965); Annot., Exclusion of Public During Criminal Trial, 156 A.L.R. 265 (1945); *id.*, 48 A.L.R.2d 1436 (1956); 5 Wharton's Criminal Law and Procedure § 2029 (1957); Note, The Right to a Public Trial in Criminal Cases, 41 N.Y.U.L. Rev. 1138, 1144–1146 (1966). Appellate courts have sometimes found a trial court's exclusionary order constitutionally infirm where it was not properly limited to the actual identifiable group of spectators whose exclusion was warranted. For example, in United States v. Kobli, 172 F.2d 919, 922–923 (3 Cir. 1949), the court held that in a Mann Act prosecution the trial court might exclude youthful spectators to protect their morals, but a general exclusion of the public on the grounds of public morals would deny defendant her right to a public trial.[3]

On the other hand, cases which have dealt with exclusions of the public for the protection of a witness, rather than out of concern for some or all of the spectators, have focused more on the propriety and duration of the exclusion rather than its scope. Thus, it has often been held that all or part of the public may be excluded during the testimony of a particular witness if reasonably necessary to prevent the witness's embarrassment or emotional disturbance.[4]

2. Petitioner's Supplemental Memorandum of Law at 2 (filed June 11, 1973).

3. *See also* People v. Jelke, 308 N.Y. 56, 123 N.E.2d 769 (1954); State ex rel. Baker v. Utecht, 221 Minn. 145, 21 N.W.2d 328, cert. denied, 327 U.S. 810, 66 S.Ct. 971, 90 L.Ed. 1034 (1946); State v. Schmit, 273 Minn. 78, 139 N.W.2d 800 (1966).

4. *See, e. g.,* Hogan v. State, 191 Ark. 437, 86 S.W.2d 931 (1935); People v. Byrnes, 84 Cal.App.2d 72, 190 P.2d 290, cert. denied, 335 U.S. 847, 69 S.Ct. 60, 93 L.Ed. 397

Even one of the cases principally relied on by petitioner, United States v. Kobli, *supra,* carefully avoids passing on this "different situation." 172 F.2d at 923.[5] Exclusion has also been justified out of concern for threats of retaliation against a witness or disclosure of his identity.[6] However, even in these situations, a court should not automatically assume that the witness is always entitled to testify removed from public scrutiny.[7]

There are also earlier, more general formulations to guide the trial judge. An order of exclusion should not "extend further than the special causes warrant in the particular instance." [8] Any exclusion order must be governed by the surrounding circumstances and evidence of what is reasonable,[9] keeping in mind that the discretionary power to close the courtroom should be "sparingly exercised" by the trial judge, "and then, only when unusual circumstances necessitate it." People v. Hinton, *supra,* 31 N.Y.2d at 76, 334 N.Y.S.2d at 889, 286 N.E.2d at 267.

We have found no support in the authorities for petitioner's contention that it is *never* proper to exclude, over a defendant's objection, *all* of the public for even a limited period of time. Nor does the fact that Mary Ann Boyd was a key prosecution witness seem to alter the question, in light of the great number of rape and similar sex offense cases [10] involving exclusions during the testimony of an always vital witness—the victim. In fact, her importance underscores the problem faced by the trial judge—the balancing of the State's interests in meeting its heavy burden of proof with all relevant evidence of guilt against the accused's constitutional rights to a fair and public trial.

■ Finally, petitioner's ingenious pre-exclusion inquiry argument is without discernible support among the cases dealing with exclusions intended to facilitate eliciting the testimony of a witness. And understandably so, for making readily identifiable classifications of the spectators is merely one reasonable method of minimizing the impact of an

(1948); State v. Purvis, 157 Conn. 198, 251 A.2d 178, cert. denied, 395 U.S. 928, 89 S.Ct. 1788, 23 L.Ed.2d 246 (1969); Moore v. State, 151 Ga. 648, 108 S.E. 47 (1921), writ of error dismissed, 260 U.S. 702, 43 S.Ct. 98, 67 L.Ed. 471 (1922); Beauchamp v. Cahill, 297 Ky. 505, 180 S.W.2d 423 (1944); State v. Poindexter, 231 La. 630, 92 So.2d 390 (1957); State v. Callahan, 100 Minn. 63, 110 N.W. 342 (1907); Riley v. State, 83 Nev. 282, 429 P.2d 59 (1967); State v. Damm, 62 S.D. 123, 252 N.W. 7 (1933), aff'd on rehearing, 64 S.D. 309, 266 N.W. 667 (1936). *Cf.* Harris v. Stephens, 361 F. 2d 888, 891 (8 Cir. 1966), cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113 (1967).

5. This same point is also recognized in petitioner's other principal cases. People v. Jelke, *supra,* 308 N.Y. at 63, 123 N.E.2d 769; State ex rel. Baker v. Utecht, *supra,* 221 Minn. at 149, 21 N.W.2d at 331.

6. United States ex rel. Bruno v. Herold, *supra*; United States ex rel. Orlando v. Fay, *supra*; People v. Hagan, 24 N.Y.2d 395, 300 N.Y.S.2d 835, 248 N.E.2d 588, cert. denied, 396 U.S. 886, 90 S.Ct. 173, 24 L.Ed.2d 161

(1969); People v. Hinton, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), cert. denied, 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed. 2d 273 (1973); People v. Pacuicca, 134 N. Y.S.2d 381 (Co.Ct.1954), aff'd, 286 App.Div. 996, 144 N.Y.S.2d 711 (1st Dep't 1955).

7. *Compare* Tanksley v. United States, 145 F.2d 58, 10 Alaska 443 (9 Cir. 1944), *with* Geise v. United States, 262 F.2d 151 (9 Cir. 1958), rehearing denied, 265 F.2d 659, cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959).

8. Tilton v. State, 5 Ga.App. 59, 64, 62 S.E. 651, 653 (1908).

9. State v. Osborne, 54 Ore. 289, 103 P. 62 (1909); People v. Hartman, 103 Cal. 242, 37 P. 153 (1894). The historical background of the public trial right is explored in depth by Judge Fuld in People v. Jelke, *supra.*

10. See cases cited in note 4, *supra.* *Cf.* Annot., Validity and Construction of Constitution or Statute Authorizing Exclusion of Public in Sex Offense Cases, 39 A.L.R.3d 852 (1971).

infringement of the public trial right. That does not, however, make it constitutionally mandated in all exclusion circumstances. It would hardly be feasible to expect, in the witness-oriented exclusion cases, that a witness afraid for her health or safety would feel, or actually be, in any better position following a trial court *voir dire* or order designed to remove from the spectators the persons responsible for her fears. A spectator's animosity or other state of mind is far more easily hidden than one's age or sex, and an apprehensive witness can be expected to continue to be apprehensive following a selective exclusion. In these circumstances, the health and safety of the witness and the rights of the defendant seem much better served by careful inquiry to determine the need for the witness's testimony and the witness's inability to testify in public, followed by an exclusion order that is limited in time to the witness's testimony only and otherwise operates, where possible, to minimize the impact on the defendant's rights.[11]

The colloquy in the record in this case reveals that the trial judge's concern was multi-faceted. His exclusion order was based partly on concern for the welfare of a young expectant mother and her unborn child and partly on her own subjective fear of reprisal—whether reasonable or unreasonable—if she testified in public. While the record falls short of establishing a real danger to her health or that of her child, or the reasonableness of her fears in terms of actual threats, or even a demonstration in court of her inability to testify publicly, this court is very reluctant to second-guess the trial court's discretion on a cold record four years hence. *See*

United States ex rel. Bruno v. Herold, *supra,* 408 F.2d at 127, 129. In view of the defense objection at trial, the benefits of hindsight and reflection suggest the trial court might have been more circumspect in its decision, prehaps following the approach outlined above. Nevertheless, this court can perceive, under the applicable law, no error of constitutional magnitude indicating a disregard of the trial court's responsibility to conduct a fair and public trial.[12]

Accordingly, petitioner's application must be denied.

So ordered.

---

[11] *E. g.,* the order could be fashioned around a response by the witness to a question directed at whether there are some particular people whose presence would or would not disturb her.

[12] Petitioner invites the court to reach an opposite result by ruling that in People v. Hagan, *supra,* and People v. Hinton, *supra;* the New York Court of Appeals has reached results inconsistent with the Sixth and Fourteenth Amendments. We decline the invitation, finding no difficulty viewing those cases to be sensible accommodations to the rights of defendants, witnesses, and the integrity of the State's judicial processes, and completely consistent with fundamental notions of due process and the generally recognized contours of the public trial right.