OPINION OF THE COURT
Charles J. Tejada, J.
During the trial of this indictment, the defendant moved for *575 an order to close the courtroom, during his testimony, on the basis that his defense at trial is that he possessed and sold drugs as an agent and registered informant of the police. Consequently, the defendant asserts that public knowledge of his identity as a police agent and informant would put his life at risk. Initially, the court denied that part of the motion to exclude the public based solely on the defendant’s waiver of his right to a public trial, but granted the alternative request for a hearing to determine whether there were compelling reasons that would warrant closure of the courtroom to the public, during the defendant’s testimony. Based on its findings after the hearing, this court granted the motion to close the courtroom to the public during the defendant’s testimony. This decision sets forth in greater detail the reasons for granting the motion. The defendant’s full name has been omitted for the purpose of publication.
In deciding this motion this court found no reported cases in this State which addressed the issue of whether a defendant may waive his right to a public trial, during his testimony, as of right. Consequently, this motion presents a question of first impression.
THE RIGHT TO A PUBLIC TRIAL AND WAIVER OF THAT RIGHT
Although no New York cases deal directly with the precise question posed by the instant motion, the right to a public trial is a well-settled legal principle in our jurisprudence. The right is guaranteed by the 6th Amendment of the United States Constitution, Civil Rights Law § 12 and Judiciary Law § 4. Public criminal trials are the norm. Defendants do not have to request public trials. The right to an open trial is presumed. (Matter of Gannett Co. v De Pasquale, 43 NY2d 370 [1977], affd 443 US 368 [1979].)
The significance of a public trial has been attributed to a number of factors. Foremost is the need to ensure that the accused is dealt with fairly and not unjustly condemned. (People v Clemons, 78 NY2d 48, 51 [1991], citing Estes v Texas, 381 US 532, 538-539 [1965].) Additionally, open trials tend to promote "testimonial trustworthiness” by inducing a fear that perjured testimony might be detected. (People v Jones, 82 AD2d 674, 677, lv denied 55 NY2d [1981], citing People v Jelke, 308 NY 56 [1954].)
The right to a public trial has long been regarded as a fundamental privilege of the defendant in a criminal prosecu *576 tian. (People v Jelke, supra, 308 NY, at 61.) Generally, when the issue of closure arises, it is the defendant who claims that his right to a public trial has been violated. (Matter of Gannett Co. v De Pasquale, supra.) Of course, there are instances where a defendant wishes to exclude specific entities, like the press, from his or her trial. The instant motion, however, seeks closure of the courtroom to the entire public. In effect, the defendant, by waiving his right to a public trial, seeks to have a private trial, during his testimony.
It is axiomatic that the right to a public trial is neither absolute nor inflexible. For example, given the great proliferation of narcotics cases, it is fairly common for courts, as in this very trial, to conduct hearings, to determine whether to exclude spectators from the courtroom, while an active undercover police officer testifies. Exclusion of the public is often ordered, after these hearings, "to shield the identity of the witness from the public and to preserve not only [his or] her future usefulness, but also [his or] her life.” (People v Hinton, 31 NY2d 71, 75 [1972], cert denied 410 US 911 [1973].)
The defendant seeks to waive his constitutional right to a public trial. This right belongs to the defendant and he has the right to waive it. (United States v Sorrentino, 175 F2d 721 [3d Cir], cert denied 338 US 868 [1949].) However, as the United States Supreme Court has held, "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. For example, although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial, see United States v. Kobli, 172 F. 2d 919, 924 (C. A. 3d Cir. 1949).” (Singer v United States, 380 US 24, 34-35 [1965].) Recognizing this principle as controlling, when the issue of closure is raised, Judge Cooke, in his dissenting opinion in Gannett (supra), wrote that "[i]t is no answer to suggest that the right to a public trial is waivable at the option of the accused. As the right of a public trial knows no correlative right to a private one [citations omitted], such a waiver cannot automatically close the court.” (43 NY2d, at 387-388.)
Therefore, as with other constitutional rights, the defendant’s right to waive a public trial is not absolute or inflexible. Thus, the defendant’s motion to exclude the public, during his testimony at trial, solely on his representations and as of right, is denied.
*577 THE HEARING PHASE
Given that the presumption of openness is not absolute and must in certain circumstances give way to other competing concerns (People v Clemons, supra, 78 NY2d, at 51), this court must embark on a close examination of the competing interests at stake in the specific context of this case, to determine whether closure is warranted (Globe Newspaper Co. v Superior CL, 457 US 596, 607-608 [1982]). Indeed, the Court of Appeals recognizes that "the inherent power to limit public access has become a common and integral aspect of due process in trials for particularly sensitive crimes (Judiciary Law, § 4) or, for instance, where closure is necessary to protect a witness’ identity (People v Hinton, * * * supra), or life (People v Hagan, 24 NY2d 395, cert den 396 US 886) or delicate emotional state (People v Smallwood, 31 NY2d 750; United States ex rel. Smallwood v La Valle, 377 F Supp 1148, affd 508 F2d 837, cert den 421 US 920) * * * And in all of these cases, the remedy — legislative or judicial — has called for 'a sensitive and wise balancing of the rights of the individual defendant and the interests of the public’ (People v Darden, 34 NY2d 177, 181-182).” (Matter of Gannett Co. v De Pasquale, supra, at 377-378.)
The United States Supreme Court has articulated a four-prong test by which to assess the propriety of a courtroom closure in a criminal case: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure. (Waller v Georgia, 467 US 39, 48 [1984]; see, People v Kan, 78 NY2d 54 [1991].)
Applying the Waller four-prong test, the defendant’s motion must first advance an overriding interest that is likely to be prejudiced. He has met this requirement. His motion requested closure so that he may fully present his defense without placing his life in jeopardy. He argues that not only is his interest better served by foregoing his right to a public trial, during his testimony, but citing Sorrentino (supra, 175 F2d, at 723), further argued that "[t]o deny the right of waiver in such a situation would be 'to concert a privilege into an imperative requirement’ to the disadvantage of the accused.” In short, the defendant claims that his right to be heard will be prejudiced and that closure is necessary to protect his life.
*578 To weigh the defendant’s interest against the public’s right to an open trial, a hearing, which was closed to the public, was granted (People v Jones, 47 NY2d 409, 414, cert denied 444 US 946 [1979]).
FINDINGS
During the hearing, the defendant, who was the only witness, stated that, as part of his defense, he intended to testify about the activities of drug dealers in the Bronx and East Harlem. Specifically, the defendant intended to describe the nature of the information he gave to the police, as an informant, including the locations of drug activities and the names of drug dealers.
The defendant further testified that on Hikers Island, where he was incarcerated, he remained in protective custody because the "word was out” that he was a police informant. The defendant expressed a fear that if he testified in open court his life would be in greater danger. He feared spectators would report the contents of his defense to the drug dealers, on whom he had informed. As a result he would be a target for retaliation.
Also, he stated that prior to requesting and being placed in protective custody he was identified as a "snitch.” Thereafter, he was involved in several fights with other inmates. At least two of these were related to his activity as a police informant. In one fight, related to being identified as a "snitch”, he received an injury over his right eye which required stitches. Additionally, the defendant reported that while his trial was pending fellow inmates were asking him for the location of the courtroom in which he was being tried.
Lastly, the defendant stated that since his incarceration on this case he was no longer providing information to the police.
Neither side offered alternatives to the requested closure of the courtroom.
DISCUSSION
The dangers of providing law enforcement agencies with information, concerning illegal drug activity, are well known. During this very trial, this court ordered a temporary closure of the courtroom to the public, during the testimony of an undercover police officer, at the prosecution’s request. A primary reason for the request was to protect the identity and *579 life of this witness. Similarly, the methods taken by law enforcement officials to protect confidential informants are generally known and accepted.
The defendant’s claim that he was acting as a police informant, before his arrest, was corroborated by several witnesses. The court took judicial notice of the trial testimony of the defendant’s former attorney. He testified that he had some discussion with the police regarding the preparation of a written informant cooperation agreement. Also, a police officer testified that he had met with the defendant in an attempt to formally register him as a police informant and that the defendant had provided information to the police concerning criminal activity, although it could not be used.
The defendant, while incarcerated pending trial, has been involved in fights and received an injury related to being identified as an informant. He remains in protective custody as a result of being identified as an informant.
These findings support closure to protect the defendant’s identity and his life.
Additionally, the defendant’s dilemma has constitutional ramifications. A denial of this motion is likely to deny or "truncate [the] defendant’s right to a fair trial.” (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 380, supra.)
Although, the presumption of innocence is the rule in criminal cases, due process for the accused would be meaningless without the opportunity to be heard. In criminal cases, the right to be heard encompasses the right to present a defense. Due process of law, with its right to present a defense, is of prime consideration to the defendant, since without it the defendant is denied his right to a fair trial.
During the hearing, the defendant indicated that if denied his closure motion he saw no alternative to testifying. The defendant’s willingness to risk his life does not eliminate the threat that testifying in an open courtroom poses to his ability to present a full defense. Here the defendant shares "the public’s interest in avoiding any developments that would threaten to truncate a defendant’s right to a fair trial.” (Matter of Gannett Co. v De Pasquale, supra, at 380.)
Also, the fact that the defendant is not presently an active undercover informant actually involved in ongoing cases, similar in nature to an undercover police officer, alone, does not militate against closure. This defendant is placed against the proverbial "rock and a hard place”. If, fearing exposure as *580 an informant, he does not present his defense, he risks conviction and mandatory imprisonment. If his defense is successful, but his closure motion is not, he will be acquitted but may become the victim of those on whom he had informed because he has been publicly exposed as an informant.
These findings support closure to preserve fairness.
Lastly, the defendant has waived his right to a public trial. Although this waiver is not automatic, it is of major significance. The defendant’s waiver is significant in determining closure because the defendant should be allowed to pursue the course he has determined will best protect his interests at trial. Also, public curiosity or interest in this trial has not been overwhelming. There has been no request from the press or any other entity or person to attend the trial. Consequently, other than the People’s general concerns for public trials, no claims of deprivation of constitutional rights have been raised. This trial does not involve a public official and no public policy issues in this regard exist.
These factors also support closure.
Lastly, neither side offers alternatives to closure of the courtroom, and this court finds no alternative which would not impinge on either side’s ability to fully question the defendant or which would not be unduly burdensome and risk bringing this issue to the jury’s attention.
CONCLUSION
The defendant’s request to close the courtroom, during his testimony, was based on his fear that his life would be in danger. This fear, although subjective, was based on a number of objective factors that warrant consideration. In the instant case, the defendant has demonstrated that his fear was not imaginary. As corroborated by one of the People’s witnesses, the defendant had more than preliminary discussions with the police about signing on as an informer. The defendant did provide information of drug activity to the police. While incarcerated the defendant was identified as a "snitch”. He was threatened, attacked and injured in prison, after he had been identified as a "snitch”. The defendant was placed and remains in protective custody, after these incidents. Closure is limited to the period of time when the defendant is testifying and there is no alternative to this limited closure.
It is well settled in this State that the carefully calibrated discretionary trial court power to exclude the public for *581 demonstrated and documented reasons is an exceptional authority that must be "sparingly exercised” only when necessitated by unusual circumstances (People v Hinton, 31 NY2d 71, 76, supra). Such unusual circumstances exist here.
Accordingly defendant’s motion to close the courtroom during his testimony is granted.